# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CHRISTOPHER M. PUTNAM,    :
    :
    Plaintiff,    :
    :
v.    :    CIVIL ACTION NO.
    :    1:10-CV-03243-RWS
CITY OF ATLANTA, a Municipal    :
Corporation of the State of    :
Georgia; ANWAR T. BRADLEY,    :
individually and in his official    :
capacity as a police officer; and
RED DOOR GROUP, LLC,

    Defendants.

## ORDER

This case comes before the Court on Defendants the City of Atlanta and Anwar T. Bradley's (the "City Defendants") Motion for Summary Judgment [52], Defendant Red Door Group, LLC's ("Red Door") Motion for Summary Judgment [53], and Plaintiff's Motion for Partial Summary Judgment [65]. After reviewing the record, the Court enters the following Order.

## Background

This case arises out of an incident that took place between Plaintiff and Defendant Anwar T. Bradley, an Atlanta Police Department ("APD") officer,

outside the Red Door Tavern in the City of Atlanta on November 30, 2008. On the evening of that date, Plaintiff was a patron of the Red Door Tavern and Defendant Bradley was providing security and checking the identifications of patrons. While it is clear that a physical altercation between these individuals took place, the facts regarding the altercation are largely in dispute.

According to the City Defendants, while Defendant Bradley was working a second job as a doorman at the Red Door Tavern, Plaintiff, a patron, became extremely intoxicated and began acting belligerently. (6/3/2011 Dep. of Anwar T. Bradley ("Bradley Dep."), Dkt. [66] at 54:10-11.) Red Door employees advised Bradley of Plaintiff's behavior and notified Bradley that Plaintiff would be brought to the front of the establishment and asked to leave the premises. (Id. at 55:3-56:14.) Two Red Door employees subsequently escorted Plaintiff to the front of the establishment, where Bradley was given a criminal trespassing warning. (Id. at 46:8-25, 56:17-25.) The Red Door employees asked Plaintiff to leave the premises. (Id. at 56:25-57:1.) At this point Defendant Bradley, pursuant to his duty as a police officer to enforce a criminal trespass warning, explained to Plaintiff that he had been issued a criminal trespass warning and therefore had to leave the premises. (Id. at 56:1-6.) After

2

Plaintiff again was asked to leave the premises, Plaintiff became argumentative and began yelling profanities.  (Id. at 57:23-24.)

At this point Plaintiff's friend, Steve Budde, intervened and attempted to escort Plaintiff out of the establishment.  (Id. at 58:25-59:5; 8/31/2011 Dep. of Steve Budde ("Budde Dep."), Dkt. [58] at 13:4-25.)  Budde and Plaintiff walked outside the Red Door Tavern and to the street, and Budde walked around the corner to hail a taxi for Plaintiff.  (Budde Dep., Dkt. [58] at 14:22-15:1.)  According to Defendant Bradley, Budde hailed a taxi and placed Plaintiff inside.  (Bradley Dep., Dkt. [66] at 61:4-8.)  Defendant Bradley resumed checking the identifications of Red Door patrons.  (Id. at 61:8-11.)  When Defendant Bradley looked up, Plaintiff had exited the taxi and was running at Bradley "at a high rate of speed with both fists clenched."  (Id. at 12-15.)  Bradley "stepped outside the club, closed the door to the club, radioed for help, and positioned [him]self to brace for [Plaintiff] to attack."  (Id. at 15-17.)

Plaintiff and Defendant Bradley collided.  (Id. at 62:3.)  Defendant Bradley deposed that Plaintiff "grabbed [Bradley] up around the collar of [his] jacket and began . . . delivering short choppy punches to [his] face."  (Id. at 62:5-7.)  Bradley deployed his police baton and delivered several strikes to

3

Plaintiff in an attempt to gain control. (Id. at 62:9-13.) After the fourth or fifth strike, Bradley performed an "academy-taught takedown" on Plaintiff, which took Plaintiff to the ground, after which Bradley placed Plaintiff in handcuffs. (Id. at 68:1-24.)

Plaintiff himself has no memory of the altercation described above. (6/27/2011 Dep. of Christopher M. Putnam ("Putnam Dep."), Dkt. [57] at 14:24-16:1.) An eyewitness to the altercation, Dominic Forth ("Forth"), however, provided a very different account of the incident than that provided by Defendant Bradley. (See generally 10/11/2011 Dep. of Dominic Forth ("Forth Dep."), Dkt. [62].) Forth happened to be walking past the Red Door Tavern at the same time as Plaintiff was being removed from the establishment. (Id. at 13:20-24.) His account is as follows:

> [T]here was a drunk guy getting carried out of the bar. (Id. at 14:2-3.) [H]e was so drunk, that he was heavy, like his weight was going. So even though he was trying to move his legs, they weren't really moving. (Id. at 16:14-17.) [T]he guy that is carrying him out is yelling at him. He is getting frustrated, because he is a dead weight. As he is trying to lift him out, he is getting heavier and heavier almost. (Id. at 17:4-7.) He got frustrated with him. And like somehow it looked like the adrenaline kind of kicked in a bit, and then he dropped him to the floor. (Id. at 21:10-13.)

4

[T]he guy just couldn't respond because, for one, he has just been dropped on the ground, and, two, he was really drunk . . . which then caused the officer to shout even more aggressively, and then he just lost it.  (Id. at 22:23-23:3.)  So then the guy is on the floor, and at this point, the officer has been trying to get his hands behind his back.  I don't know if he was handcuffed.  He was trying to get his hands behind his back, and he was yelling at him . . . saying, 'Get your hands behind your back.'  (Id. at 23:6-17.)

And at this point, I remember being shocked because like the guy can't respond.  Anyone can see that the guy is just too drunk, and hitting him on the head is not going to make him respond quicker.  That's what happened.  He got mad at him and he hit him . . . [with] a baton . . . multiple times, and there was blood.  (Id. at 25:6-21.)

Similarly, in an affidavit, Forth swore as follows:

On the night of November 30, 2008, I was waiting in line with several other people to enter Red Door Bar on Roswell Road in Atlanta.  As I was waiting in line, I personally observed a City of Atlanta Police Officer flagrantly beat a customer who [sic] he had escorted out of the Red Door Bar.

The customer appeared to me to be very intoxicated.  As he was being escorted out of the bar, the customer offered the Atlanta Police Officer no resistance.  Based on my first hand observation, the customer was too intoxicated to offer the police officer any physical resistance.

After the Atlanta Police Officer had escorted the customer into the parking lot, the officer began to forcefully strike the customer about the head and shoulders with his police baton.  Based on what I observed, the customer had done nothing which required the

Atlanta Police Officer to strike him with his police baton or with any other object, or his fists.

After the beating of the customer by the Atlanta Police Officer, the customer was left lying in a pool of his own blood until the EMS vehicle arrived.

The attack by the Atlanta Police Officer upon the customer was so brutal that it actually placed me in fear for my own safety.

(Forth Dep., Ex. 3, Dkt. [62], Forth Aff. ¶¶ 2-5, 7.)

Following the incident described above (in two very different accounts), Plaintiff filed a Complaint in this Court, alleging various claims against the City Defendants and Defendant Red Door Group, LLC. (See generally Dkt. [1].) In Counts I and II, Plaintiff raises claims against the City Defendants for use of excessive force in violation of the Fourth Amendment to the federal constitution. (Dkt. [1] ¶¶ 37-73.) The claim against the City of Atlanta, set out in Count II, is based on the allegation that the City maintains "a custom or policy of condoning the use of excessive force by its officers," which custom or policy was the "moving force behind [Defendant Bradley's] beating of [Plaintiff] . . . ." (Id. ¶ 73.)

In Count III, Plaintiff raises claims against Defendant Bradley for assault, battery, and intentional infliction of emotional distress under Georgia law (id.

6

¶¶ 74-75) and, in Count IV, alleges that the City of Atlanta is liable for negligence in failing to properly supervise and train Defendant Bradley and in failing to "take proper corrective action" against Bradley for "his past misconduct" (id. ¶¶ 76-77).  Finally, in Count V, Plaintiff alleges that Defendant Red Door Group, LLC is liable under the doctrine of respondeat superior for the assault, battery, and intentional infliction of emotional distress alleged in Count III.[1]  (Id. ¶¶ 78-79.)  Defendants now move for summary judgment on each count, and Plaintiff moves for summary judgment on Count V.  After setting out the legal standard governing a motion for summary judgment, the Court considers the parties' respective motions, in turn.

## Discussion

### I.     Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . .

---

[1] In Counts VI, VII, and VIII, Plaintiff seeks to recover damages, punitive damages, and attorney's fees, respectively.  (Compl., Dkt. [1] ¶¶ 80-83.)

AO 72A
(Rev.8/82)

court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259

(11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

(internal quotations omitted)).  Where the moving party makes such a showing,

the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does

exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must

view all evidence and draw all reasonable inferences in the light most favorable

to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296

(11th Cir. 2002).  But, the court is bound only to draw those inferences which

are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.    The City Defendants' Motion for Summary Judgment [52]

As stated in the Background section, supra, Plaintiff raises claims against the City Defendants for excessive force in violation of the Fourth Amendment (Counts I & II), against Defendant Bradley for assault, battery, and intentional infliction of emotional distress under state law (Count III), and against the City of Atlanta for negligence in failing to properly train and supervise Defendant Bradley and discipline him for past misconduct (Count IV). The City Defendants move for summary judgment as to each Count. The Court first

considers Plaintiff's federal law claims, set out in Counts I and II, before turning to the state law claims raised in Counts III and IV.

A.    Plaintiff's Federal Law Claims

In Counts I and II of the Complaint, Plaintiff raises claims against Defendant Bradley and the City of Atlanta, respectively, for excessive use of force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983.  The City Defendants move for summary judgment on Count I, arguing that Plaintiff has failed to show that Defendant Bradley used excessive force and that, in any event, Defendant Bradley is entitled to qualified immunity.  (Br. in Supp. of City Defs.' Mot. for Summ. J. ("City Defs.' Br."), Dkt. [52-1] at 9-14.)  They seek summary judgment as to Count II on grounds that Plaintiff has failed to produce any evidence that Defendant Bradley's alleged use of excessive force stemmed from an official policy or custom of the City–thus precluding City liability.  (Id. at 5-8.)  The Court considers these arguments below, addressing first Plaintiff's Count II claim against the City of Atlanta.

1.    *Section 1983 Claim against Defendant City of Atlanta (Count II)*

Under 42 U.S.C. § 1983,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"In order to prevail in a civil rights action under Section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.'" Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th Cir. 1990)). Local government units constitute "persons" subject to suit under Section 1983. Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). At the same time, however, the Supreme Court "has placed strict limitations on municipal liability under [Section] 1983." Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003).

AO 72A
(Rev.8/82)

In particular, the Supreme Court in <u>Monell</u> held that "a municipality cannot be held liable under [Section] 1983 on a <u>respondeat superior</u> theory." 436 U.S. at 691. On the contrary, the Court held that local governing bodies can be sued under Section 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Id.</u> at 690. In other words, to hold a municipality liable under Section 1983, a plaintiff must show that a municipal employee or policymaker committed the constitutional violation, and did so pursuant to an official municipal policy or custom. <u>Id.</u> at 694; <u>Grech</u>, 335 F.3d at 1329. This requirement of a policy or custom "is intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action *for which the municipality is actually responsible*." <u>Grech</u>, 335 F.3d at 1329 n.5 (emphasis in original) (citing cases).

The City Defendants move for summary judgment on Plaintiff's Count II claim on grounds that Plaintiff has failed to produce any evidence of a City policy or custom that was the moving force behind the alleged violation of Plaintiff's Fourth Amendment rights. (<u>See</u> City Defs.' Br., Dkt. [52-1] at 5-8.)

AO 72A
(Rev.8/82)

In opposition to their motion for summary judgment, Plaintiff argues that the City maintains a custom or policy of deliberate indifference to the use of excessive force by its police officers and therefore is liable under section 1983 for Defendant Bradley's use of excessive force against Plaintiff. (See Pl.'s Mem. in Resp. to Defs.' Mots. for Summ. J. & Request for Partial Summ. J. in Pl.'s Favor ("Pl.'s Opp'n"), Dkt. [63] at 32 ("[A] reasonable jury could find that the City encouraged, or at least acted with deliberate indifference to the use of excessive force . . . by its sworn officers . . . .").) In particular, Plaintiff argues that the City has shown deliberate indifference through its failure to investigate claims of excessive force made against Bradley and failure to take disciplinary action against him.[2] (Id. at 31-36; see, e.g., id. at 34 ("The evidence of record allows, if not compels[,] a reasonable finder of fact to conclude that when the City of Atlanta receives a citizen complaint of excessive force through an ante litem notice, its official policy is to do nothing; to whitewash the claim . . . .").)

---

[2] While Plaintiff also alleges in the Complaint that the City has shown deliberate indifference through its failure to train and supervise Bradley (Dkt. [1] ¶¶ 71-72), Plaintiff argues in opposition to the City Defendants' motion for summary judgment only that the City has shown deliberate indifference through its failure to investigate and discipline Bradley for instances of misconduct. The Court thus considers abandoned the claim of deliberate indifference based on the City's failure to train or supervise.

13

This type of claim may be actionable under Monell. The Eleventh

Circuit Court of Appeals has held, "A municipality's failure to correct the

constitutionally offensive actions of its police department may rise to the level

of a 'custom or policy' if the municipality tacitly authorizes these actions or

displays deliberate indifference towards the police misconduct." Brooks v.

Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987). For example, in Depew v. City

of St. Marys, the plaintiffs filed an action against the city to recover for the

alleged unlawful use of force by police officers, arguing that the city was liable

under section 1983 because of its failure to discipline city police officers in the

face of known misconduct. 787 F.2d 1496 (11th Cir. 1986). The Eleventh

Circuit found sufficient evidence to support the jury's verdict in favor of the

plaintiffs, reasoning as follows:

> [W]hile the city provided rules and regulations for the operation of
> its police department, these rules were violated on numerous
> occasions. The city, however, failed to rectify the situation. The
> evidence revealed several incidents involving the use of
> unreasonable and excessive force by police officers. Therefore, the
> city had knowledge of improper police conduct, but failed to take
> proper remedial action. The continued failure of the city to prevent
> known constitutional violations by its police force is precisely the
> type of informal policy or custom that is actionable under section
> 1983.

AO 72A
(Rev.8/82)

Id. at 1499.

Similarly, in Brooks, the plaintiff sought to hold the City of Atlanta liable

under section 1983 for a police officer's alleged use of excessive force, based

on the allegation that the city failed to investigate allegations of police

misconduct and to discipline officers for such misconduct.  813 F.2d at 1191.

The Court, however, found insufficient evidence to support this claim, despite

the existence of multiple citizens' complaints against the defendant officer:

> Quite simply, there is no evidence that city officials were aware of
> past police misconduct. . . .  Brooks never demonstrated that past
> complaints of police misconduct had any merit.  Indeed, the
> number of complaints bears no relation to their validity. . . .  The
> City presented testimony that each complaint was fully
> investigated and found to be lacking in merit.  In sum, there is no
> evidence that would allow a jury to find that the City knew or
> should have known that the natural consequences of its policy and
> practices would be the deprivation of constitutional rights.

Id. at 1193-94.

In support of Plaintiff's claim of deliberate indifference on the part of the

City of Atlanta in this case, Plaintiff has presented evidence of three past

complaints against Defendant Bradley for various forms of alleged misconduct,

for which little to no disciplinary action was taken.  (Bradley Dep., Exs. 1-7,

Dkt. [66].)   This evidence is in the form of Internal Investigations reports taken

15

from Defendant Bradley's personnel file. (Bradley Dep., Dkt. [66] at 14:8-11.)

Only one report contains allegations of physical violence on the part of

Defendant, as explained immediately below.

According to this report, a citizen accused Defendant Bradley of kicking

him in the face three times while the citizen was lying on the ground being

handcuffed. (Bradley Dep., Ex. 5, Dkt. [66].) The report records Defendant

Bradley's version of the incident, in which he denies having kicked the citizen.

(Id.) The report also states that the APD's Internal Affairs Unit sent the

complainant a certified letter asking him to submit to further questioning

regarding the incident; at the time the report was prepared, the letter had been

signed for but the complainant had not followed up with the department to

submit to additional questioning. (Id.) The only other witness to the arrest was

another officer, who stated that he did not see Defendant Bradley kick the

citizen in the face. (Id.) Based on this evidence, the Internal Affairs

Department concluded that the charge against Defendant Bradley should not be

sustained:

> [The citizen] did suffer injuries to his face during his arrest by the
> officers, but there is no corroborating evidence suggesting that
> Officer Bradley kicked him in the face. [The citizen] was resisting

AO 72A
(Rev.8/82)

> arrest and the officers used the necessary force needed to affect the
> arrest.  Therefore, I find insufficient evidence to sustain the charge.

(Id.)

The Court finds that a reasonable jury could not conclude, based on this

evidence, that the City of Atlanta was deliberately indifferent to allegations that

its police officers used excessive force.  On the contrary, this evidence

demonstrates that the City investigated the allegation that Defendant Bradley

had used excessive force.  It appears that the City reached out to the

complainant to question him regarding the incident but that the complainant did

not respond.  Based on the facts before it, and the lack of any corroborating

evidence of the complainant's allegations, the City concluded that the charge

against Bradley should not be sustained.  While Plaintiff may be disappointed

with the result of the investigation, on these facts, no reasonable jury could

conclude that the City's decision to deny the charge demonstrated a policy or

custom of deliberate indifference to excessive force.

The other reports cited by Plaintiff as evidence of the City's deliberate

indifference to Defendant Bradley's use of excessive force concern allegations

of misconduct not rising to the level of physical violence or other extreme uses

17

of force.  For example, in one report, a citizen complained that Defendant

Bradley referred to him in vulgar and derogatory terms and even threatened to

kill him.  (Bradley Dep., Ex. 2, Dkt. [66].)  According to the report, a sergeant

with the APD's Office of Professional Standards went to the complainant's

apartment complex in an attempt to speak with him regarding the incident, only

to learn that the complainant had moved and left no forwarding address.  (Id.)

Defendant Bradley was sanctioned for removing his badge during the incident,

but no other disciplinary action was taken.  (Bradley Dep., Ex. 1, Dkt. [66].)

As with the report discussed above, this report fails to raise a triable issue

of fact regarding whether the City of Atlanta is deliberately indifferent to its

officers' use of excessive force.  The report reveals that the City did conduct an

investigation into the allegations of misconduct against Bradley and, as part of

that investigation, attempted to locate the complainant for questioning.  This

does not suggest deliberate indifference.  Furthermore, the allegations against

Defendant Bradley stated in this report do not concern the use of excessive

force (or any force at all); the City's response to the allegations thus has no

evidentiary value with respect to the City's policy or custom regarding police officers' alleged use of excessive force.[3]

In sum, the evidence of past complaints against Defendant Bradley for inappropriate conduct is insufficient to create a genuine factual dispute as to whether the City of Atlanta is deliberately indifferent to excessive uses of force by its police officers. To the extent the reports even concern allegations of excessive force, they reveal an effort on the part of the City to investigate such allegations, undermining the appearance of deliberate indifference. Additionally, Plaintiff has produced no evidence that any of the complaints against Bradley actually had merit. See Brooks, 813 F.2d at 1193 ("[The plaintiff] never demonstrated that past complaints had any merit. Indeed, the number of complaints bears no relation to their validity."). The Court therefore is constrained to conclude that Plaintiff has failed to produce sufficient evidence

_____

[3] According to a third report, Defendant Bradley was accused of threatening to shoot a citizen's dog and "kick her son's ass" because he directed profanity toward a police officer. (Bradley Dep., Ex. 3, Dkt. [66].) Bradley was also accused of placing his forearm against the complainant's son's chest to block him. (Id.) No disciplinary action was taken against Bradley. (Id.) While this report does concern the use of some degree of force, for which no disciplinary action was taken, the Court finds it is not an amount of force that could give rise to an excessive force claim. Accordingly, the report does not support a finding that the City of Atlanta is deliberately indifferent to Defendant Bradley's alleged use of excessive force.

AO 72A
(Rev.8/82)

of deliberate indifference to create a triable issue of fact regarding the City of Atlanta's liability under section 1983.[4] The City Defendants' Motion for Summary Judgment therefore is due to be GRANTED as to Count II.

2.    *Section 1983 Claim against Defendant Bradley (Count I)*

In Count I of the Complaint, Plaintiff alleges that Defendant Bradley used excessive force during the course of Plaintiff's arrest in violation of Plaintiff's Fourth Amendment rights. The City Defendants move for summary

---

[4] In addition to the reports of past complaints against Defendant Bradley, Plaintiff argues that the investigation of his own ante litem notice by the City of Atlanta claims department reveals the City's deliberate indifference to Defendant Bradley's use of excessive force. (Pl.'s Opp'n, Dkt. [63] at 18-19, 34-35.) To this end, Plaintiff produces evidence that in response to his ante litem notice, the claims investigator assigned to his case simply reviewed the notice, reviewed Defendant Bradley's police report, and contacted the police department's Office of Professional Standards to find out if an OPS investigation was pending. (6/3/2011 Dep. of Gwendolyn Burns ("Burns Dep."), Dkt. [67] at 14-19.) Burns did not interview Defendant Bradley, any witnesses, or any employee of the Red Door Tavern. (Id. at 9:20-10:3.)

This investigation, however, took place after the incident between Plaintiff and Defendant Bradley (as it is the investigation into the incident itself); evidence regarding the investigation therefore does not support a finding of a custom or policy of deliberate indifference that was the *moving force* behind Plaintiff's alleged constitutional injuries. See, e.g., Tabb v. Veazey, No. 1:05-cv-1642, 2007 WL 951763, at *5 (N.D. Ga. 2007) ("Specifically, with regard to plaintiff's allegations that the City failed to properly discipline [the defendant] regarding the incident with the plaintiff and allowed [the defendant] to resign instead of being fired, all of these actions took place after the incident involving plaintiff, and thus cannot be said to be the 'moving force' behind plaintiff's alleged injuries.").

AO 72A
(Rev.8/82)

judgment on this claim on two grounds. First, they argue that Plaintiff has failed to put forward any evidence that the force used by Bradley was constitutionally excessive. (City Defs.' Br., Dkt. [52-1] at 10.) Second, they argue that even if Bradley used excessive force, Bradley is shielded from liability under the doctrine of qualified immunity. (Id. at 11-14.) The Court considers these arguments in turn.[5]

### i.    Excessive Force

The United States Supreme Court has held that "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest . . . or other 'seizure' of his person . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard . . . ." Graham v. Connor, 490 U.S. 386, 388 (1989). "Determining whether the force used to effect a

---

[5] As a threshold matter, to the extent Plaintiff asserts liability against Bradley in his official capacity, this claim is tantamount to a claim against the City of Atlanta and therefore is governed by the analysis set forth in Part II.A.1., supra. See, e.g., Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal quotation and citation omitted). Just as Plaintiff's section 1983 excessive force claim against the City fails as a matter of law, his claim against Defendant Bradley in his official capacity fails. The Court thus considers Plaintiff's Count II claim against Defendant Bradley in his individual capacity and whether the City Defendants are entitled to judgment as a matter of law.

particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotation and citations omitted). Furthermore, the reasonableness of a particular amount of force must be determined from the perspective of a reasonable officer on the scene and not with the benefit of hindsight. See id. ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment.") (internal quotation and citation omitted). The Eleventh Circuit has articulated four (4) factors that courts should consider when analyzing the reasonableness of an officer's use of force: "(1) the need for the application of the force, (2) the relationship between the need and the amount of the force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously." Moore v. Gwinnett Cnty., 967 F.2d 1495, 1498 (11th Cir. 1992).

Considering these factors and the evidence in the record, the Court finds that genuine issues of fact exist regarding the reasonableness of Defendant Bradley's use of force. The City Defendants argue, "[T]here is no evidence that

Officer Bradley used excessive force against Plaintiff while attempting to defend himself. Rather, the evidence shows that Officer Bradley only used that force necessary to save himself from Plaintiff's violent attack and to subdue Plaintiff." (City Defs.' Br., Dkt. [52-1] at 10-11.) Contrary to this argument, however, there is record evidence–in the form of Dominic Forth's deposition testimony–that Plaintiff was beaten severely while he was in a state of such extreme intoxication that he could not walk unassisted or offer Bradley any physical resistance. This evidence directly conflicts with Defendant Bradley's testimony that he used force only to repel an attack, and used only the amount of force necessary to do so. Given the conflicting evidence regarding Defendant's use of force, the Court cannot rule as a matter of law that the use of force was reasonable.[6]

---

[6] In their reply brief, the City Defendants recognize the presence of these disputed facts. They argue, "The only alleged disputed facts appear to come from a witness [Dominic Forth] whose account of the incident is so different from everyone else's that it would lead this court to believe that he witnessed a different incident." (City Defs.' Reply Br. in Supp. of Mot. for Summ. J., Dkt. [69] at 3.) They continue, "This witness' account is so breathtakingly different . . . that it defies logic and is easily discredited by all the other witness testimony." (Id.) This argument misses the mark. The existence of conflicting testimony in this case is precisely why the Court cannot rule on the issue presented as a matter of law and why the case must go to a jury. A jury, indeed, may decide to discredit the testimony of Dominic Forth, but that is the prerogative of a jury, not this Court.

AO 72A
(Rev.8/82)

### ii.    Qualified Immunity

The City Defendants also argue that even if Defendant Bradley used excessive force, he is entitled to qualified immunity from suit. Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities. Wilson v. Layne, 526 U.S. 603, 609 (1999). Officials are shielded "insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (emphasis added). The qualified immunity analysis consists of two steps: "First, the defendant government official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995). "If the defendant meets this burden, the plaintiff then must demonstrate that the defendant violated clearly established law based upon objective standards." Id. Qualified immunity is a question of law for the court. Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993). In this case, Plaintiff does not dispute that Defendant Bradley was acting within his discretionary authority at the time of the incident at issue. The sole issue is thus whether Defendant

Bradley–assuming that he used constitutionally excessive force during

Plaintiff's arrest–violated *clearly established* constitutional law in doing so.

A constitutional right is clearly established "only if its contours are

'sufficiently clear that a reasonable official would understand what he is doing

violates that right.'" Vaughan v. Cox, 316 F.3d 1210, 1212 (11th Cir. 2003)

(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  While the fact

patterns of prior cases used to show that a right is clearly established need not

be "fundamentally similar" or even "materially similar," the salient question is

whether the law at the time of the alleged violation gave officials "fair warning"

that their acts were unconstitutional.  Holmes v. Kucynda, 321 F.3d 1069, 1078

(11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S.730, 740 (2002)).  The

Eleventh Circuit also has recognized, however, that in certain cases, an

official's conduct may "lie so obviously at the very core of what the Fourth

Amendment prohibits that the unlawfulness of the conduct [would be] readily

apparent to the official," notwithstanding a dearth of case law on the issue.

Mercado v. City of Orlando, 407 F.3d 1152, 1160 (11th Cir. 2005) (internal

quotation and citation omitted).  In other words, and in the context of excessive

force claims, when the facts of a case are "so far beyond the hazy border

between excessive and acceptable force," the officer "had to know he was violating the Constitution even without caselaw on point." Id. (internal quotation and citation omitted).  The Court finds this to be one of those cases.

The City Defendants argue that Bradley did not violate clearly established law because no court decision gives police officers "fair warning" that "using only the force necessary to defend oneself from [a] violent attack constitutes a [constitutional] violation . . . ."  (City Defs.' Br., Dkt. [52-1] at 14.) The City Defendants, however, miss the point.  There is evidence in the record that Defendant Bradley did not resort to force only to repel an attack by Plaintiff (and did not use only the amount of force necessary to do so). According to Dominic Forth, Defendant Bradley beat Plaintiff while Plaintiff was too intoxicated to offer any resistance.  If a jury finds Forth's account to be true, then Bradley will have engaged in conduct that would be obviously unlawful to any reasonable officer, with or without caselaw directly on point. Genuine issues of fact thus exist as to whether Defendant Bradley violated clearly established law, precluding the Court from ruling as a matter of law that Defendant Bradley is entitled to qualified immunity.  The City Defendants' Motion for Summary Judgment therefore is DENIED as to Count I.

AO 72A
(Rev.8/82)

B.    Plaintiff's State Law Claims

In Counts III and IV of his Complaint, Plaintiff raises claims against the City Defendants under Georgia law.  In Count III, Plaintiff alleges that Defendant Bradley is liable for assault, battery and intentional infliction of emotional distress and, in Count IV, that the City of Atlanta is liable for negligence in failing to properly supervise and train Bradley and in failing to take proper corrective action against him for past misconduct.  (Compl., Dkt. [1] ¶¶ 74-77.)  The City Defendants move for summary judgment on Count IV on grounds of the City of Atlanta's sovereign immunity.  (City Defs.' Br., Dkt. [52-1] at 14-15.)  They also seek summary judgment on Count III, arguing that Defendant Bradley is entitled to official immunity from Plaintiff's state law claims.  (Id. at 15-18.)  The Court considers these arguments in turn.

1.    *Negligence (City of Atlanta) (Count IV)*

Municipal corporations such as the City of Atlanta are immune from liability for damages under the doctrine of sovereign immunity.  See O.C.G.A. § 36-33-1(a) ("Pursuant to Article IX, Section II, Paragraph IX of the Constitution of the State of Georgia, the General Assembly . . . declares it is the public policy of the State of Georgia that there is no waiver of the sovereign

27

immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages."). Because Plaintiff has not alleged nor argued that the City's sovereign immunity has been waived, it appears that Plaintiff's state law claims against the City of Atlanta indeed are barred by the doctrine of sovereign immunity.

In an effort to avoid this result, however, Plaintiff points to O.C.G.A § 36-33-1 (Pl.'s Opp'n, Dkt. [63] at 36), which provides, "Municipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskilled performance of their *ministerial duties*, they shall be liable." O.C.G.A. § 36-33-1 (emphasis added). Plaintiff argues that the City's duty to investigate allegations of a police officer's use of excessive force is a "ministerial duty" and, thus, that the City is not entitled to sovereign immunity from claims that it willfully failed to conduct such investigations.[7] (Id. at 37-38.) Indeed, in the Complaint, Plaintiff alleges that the City negligently performed its "ministerial

---

[7] Although, in the Complaint, Plaintiff alleges negligence against the City based on the failure to properly train and supervise Bradley, the Court finds this claim abandoned. In opposition to the City Defendants' Motion for Summary Judgment, Plaintiff argues only that the City is liable for negligence based on its failure to take proper disciplinary action against Bradley for known misconduct.

duty" to "take corrective action against Officer Bradley for his past misconduct." (Dkt. [1] ¶ 76.) Plaintiff further alleges that "[b]ecause the negligence causing [his] injuries amounted to a failure to properly perform ministerial functions, official immunity does not apply . . . ." (Id.)

Plaintiff's argument fails. Contrary to Plaintiff's assertions, the duty to "take corrective action" against employees in the face of misconduct does not constitute a "ministerial duty," the improper performance of which could subject the City of Atlanta to liability, notwithstanding sovereign immunity. As Plaintiff correctly states, "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Hicks v. McGee, 713 S.E.2d 841, 844 (Ga. 2011). By contrast, "[a] discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id. The discipline of employees plainly is not a ministerial act as it calls for a great deal of personal deliberation, judgment, reasoning, and discretion.

AO 72A
(Rev.8/82)

In sum, because Plaintiff has failed to show any waiver of the City's sovereign immunity or that his claim for negligence arises out of the City's improper performance of a ministerial act, the City is entitled to sovereign immunity. Accordingly, the City Defendants' Motion for Summary Judgment is GRANTED as to Count IV.

> 2. *Assault, Battery, & Intentional Infliction of Emotional Distress (Defendant Bradley) (Count III)*

As stated above, the City Defendants move for summary judgment on Plaintiff's claims against Defendant Bradley for assault, battery, and intentional infliction of emotional distress on grounds of official immunity. (City Defs.' Br., Dkt. [52-1] at 16-18.) The state constitutional provision governing official immunity provides as follows:

> [A]ll officers or employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.

GA. CONST. art. I, § 2, ¶ 9(d). The Supreme Court of Georgia has held that the

30

term "official functions" refers to "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." Gilbert, 452 S.E.2d at 483. Accordingly, this constitutional provision "provides no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure." Id. "It, however, does provide immunity for the negligent performance of discretionary acts . . . ." Id.

The City Defendants argue that Defendant Bradley is entitled to official immunity from Plaintiff's state law claims because he was performing a discretionary function at the time of the incident with Plaintiff and because Plaintiff has failed to produce any evidence that he acted with actual malice or "any intent other than to defend himself against Plaintiff and subdue him in order to effect the arrest." (Defs.' Br., Dkt. [52-1] at 17.) Plaintiff does not dispute that Bradley was performing a discretionary function at the time of the incident. (Pl.'s Opp'n, Dkt. [63] at 30.) The sole issue thus becomes whether Plaintiff has produced sufficient evidence of actual malice or intent to injure to raise a genuine issue of material fact regarding Defendant Bradley's entitlement to official immunity.

31

The Court finds that Plaintiff has produced sufficient evidence from which a reasonable jury could find that Defendant Bradley acted with actual malice or intent to injure. As explained in Part II.A.2., supra, there is evidence in the record that Defendant Bradley repeatedly struck Plaintiff while Plaintiff was offering no physical resistance to Bradley and was in a state of such extreme intoxication that he could not walk unassisted. From this evidence alone, a reasonable jury could find actual malice or intent to injure. In light of this evidence, the Court cannot conclude as a matter of law that Defendant Bradley is entitled to official immunity from Plaintiff's state law claims. The City Defendants' Motion for Summary Judgment thus is DENIED with respect to Count III.

### C.    Conclusion

In accordance with the foregoing, the City Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's federal and state law claims against the City of Atlanta (Counts II & IV) and DENIED as to Plaintiff's federal and state law claims against Defendant Bradley (Counts I & III).

AO 72A
(Rev.8/82)

**III.    Defendant Red Door Group, LLC's Motion for Summary Judgment
[52] and Plaintiff's Motion for Partial Summary Judgment [65]**

As stated in the Background section, <u>supra</u>, in Count V of the Complaint,

Plaintiff alleges that Defendant Red Door Group, LLC ("Red Door") is liable

for Defendant Bradley's alleged assault, battery, and intentional infliction of

emotional distress under the doctrine of <u>respondeat</u> <u>superior</u>.  (Dkt. [1] ¶¶ 78-

79.)  Plaintiff and Red Door both move for summary judgment on this claim.

(<u>See generally</u> Pl.'s Mem. in Resp. to Defs.' Mots. for Summ. J. & Request for

Partial Summ. J. in Pl.'s Favor ("Pl.'s Mot. for Partial Summ. J."), Dkt. [65] &

Red Door's Mot. for Summ. J., Dkt. [53].)  The filing of cross-motions for

summary judgment does not give rise to any presumption that no genuine issues

of material fact exist.  Rather, "[c]ross-motions must be considered separately,

as each movant bears the burden of establishing that no genuine issue of

material fact exists and that it is entitled to judgment as a matter of law."  <u>Shaw</u>

<u>Constructors v. ICF Kaiser Eng'rs, Inc.</u>, 395 F.3d 533, 538-39 (5th Cir. 2004).

Plaintiff argues that it is entitled to judgment as a matter of law on its

claim against Red Door because Defendant Bradley was acting as a Red Door

employee when the incident involving Plaintiff occurred, thus subjecting Red

33

Door to liability under the doctrine of <u>respondeat superior</u>.  (Pl.'s Mot. for

Partial Summ. J., Dkt. [63] at 38-43.)  Red Door disputes this assertion.  Red

Door argues that it is entitled to judgment as a matter of law because, first,

Defendant Bradley was an independent contractor of Red Door, not an

employee, and because, second, regardless of the nature of the employment

relationship, Defendant Bradley was performing police duties that Red Door did

not direct at the time of the occurrence.  (Red Door's Mot. for Summ. J., Dkt.

[53] at 8-13; Red Door's Br. in Supp. of Resp. to Pl.'s Mot. for Partial Summ. J.

("Red Door's Resp. to Pl.'s Mot. for Partial Summ. J."), Dkt. [70-1] at 10-14.)

Under the doctrine of <u>respondeat superior</u>, an employer may be held

liable for the torts of an employee if the employee was acting within the course

and scope of his employment at the time the tort was comitted.  <u>See, e.g.,</u>

<u>Matheson v. Braden</u>, 713 S.E.2d 723, 725-26 (Ga. Ct. App. 2011) ("When a

servant causes an injury to another, the test to determine if the master is liable is

whether or not the servant was at the time of the injury acting within the scope

of his employment and on the business of the master.") (internal quotation and

citation omitted).  As a general rule, however, an employer cannot be held liable

under the doctrine of <u>respondeat superior</u> for the torts of independent

contractors.  Page v. CFJ Props. et al., 578 S.E.2d 522, 523 (Ga. Ct. App. 2003).

The distinction between these relationships is as follows:

> Whether the relationship of the parties under the contract for
> performance is that of master and servant or that of employer and
> independent contractor lies in whether the contract gives, or the
> employer assumes, the right to control the time, manner and
> method of executing the work, as distinguished from the right
> merely to require certain definite results in conformity with the
> contract.

Rembert v. Arthur Schneider Sales, Inc., 432 S.E.2d 809, 811 (Ga. Ct. App.

1993).

In cases involving off-duty police officers working for private employers,

however, "yet another element must be considered."  Id.  If the officer "was

performing police duties  which the employer did not direct when the cause of

action arose[,]" the employer will escape liability.  Page, 578 S.E.2d at 523-24.

See also Touchton v. Bramble, 643 S.E.2d 541, 543 (Ga. Ct. App. 2007); Hyatt

Corp. v. Cook, 529 S.E.2d 633, 635-36 (Ga. Ct. App. 2000); Seibers et al. v.

Dixie Speedway, Inc., 470 S.E.2d 452, 454 (Ga. Ct. App. 1996); Rembert, 432

S.E.2d at 811 (same).  Accordingly, where an off-duty police officer employed

by a private employer was performing police duties not directed by the

employer when the cause of action arose, it is immaterial whether the officer

35

was an employee or independent contractor; the employer will not be held vicariously liable. Page, 578 S.E.2d at 524.

For example, in Touchton, an amusement park paid deputies of the county sheriff's office to provide law enforcement at the park. 643 S.E.2d at 543-44. The evidence showed that while the deputies were paid directly by the park, they did not take orders from park personnel and answered only to the sheriff's department. Id. Indeed, the sheriff's department coordinated the number of officers needed at the park, the assignment of duties, and the number of hours worked. Id. at 543. The security director at the park never told the officers how to respond to criminal acts or security issues at the park, and the park did not direct them in their law enforcement duties. Id. at 544. The park provided the officers with no direction, guidelines, or instruction, although park employees would bring matters to the officers' attention or ask for assistance. Id.

The incident that gave rise to the case involved accusations by park patrons that another patron was exposing himself. Id. at 543. The patrons reported this alleged conduct to a park employee, who then reported the allegations to a deputy working in the park. Id. The deputy and various park

employees searched for the suspect, who eventually was apprehended by the deputy.  Id.  The deputy subsequently escorted the suspect to the park office, where he questioned him in the presence of the park employee to whom the accusations originally were made.  Id.  With the help of this employee, the deputy placed the suspect in handcuffs and then, with the help of another law enforcement officer, escorted him out of the park and into a police car.  Id.

The suspect subsequently brought suit against the deputy and the amusement park for false imprisonment and other torts, alleging the latter was liable for the deputy's conduct under the doctrine of respondeat superior.  Id. at 543.  The court, however, held that the park could not be held liable for the actions of the deputy because the deputy was exercising a police function not directed by the park when the cause of action accrued.  Id.  The court reasoned as follows:

> Given [the] evidence, no reasonable jury could find Wild Adventures [the park] liable for Bramble's [the deputy] conduct. Wild Adventures is not responsible for his actions simply because it paid him. . . .  Moreover, although Wild Adventures employees helped Bramble locate Mr. Touchton [the suspect] and assisted in his detention and arrest, the facts do not demonstrate that Wild Adventures directed or controlled Bramble during the investigation or in the exercise of his police duties.

37

AO 72A
(Rev.8/82)

Id.

Similarly, in Cook, the court held that a hotel was not liable for the conduct of an off-duty police officer hired to provide hotel security, based on its finding that the off-duty officer was performing police duties, not under the direction of the hotel-employer, at the time the cause of action arose. 529 S.E.2d at 635, 636. The facts were as follows. The off-duty officer, Thran, was hired to provide security in the Hyatt Hotel on New Year's Eve between the hours of noon and 3 a.m. and was to be paid by Hyatt $15 per hour. Id. at 635. At around 12:30 a.m., the bartender told an unruly group of patrons to leave the bar, after which the hotel manager announced the bar would be closing. Id. The manager then approached Thran in the lobby and told him there "was a problem in the bar," at which time Thran proceeded to the bar. Id. The following series of events then took place:

> [Thran] spoke to the bartender who told him that no one was paying attention to her direction to leave, and that someone had been nasty to her. Thran then began directing the crowd to leave, and people began to go. As the [members of the group were leaving the bar], Thran placed his hand on [the plaintiff]'s back and told them to get going and that it was time to go. Although [the plaintiff] did not hear the statement, he did receive a push from behind from the officer. [The plaintiff] told Thran, 'Don't touch me.' A few steps later, Thran took [the plaintiff's] arm,

38

> attempting to guide him from the bar.  At that point, [the plaintiff]
> jerked his arm and again told Thran not to touch him.
>
> Officer Thran described the arm movement as 'looking like an
> aggressive move to me,' and as being 'back towards me.'  Thran
> believed that if he did not take action, the plaintiff 'would have
> been acting violent.'  At that point, Thran grabbed [the plaintiff] by
> the neck, took him to the ground, and handcuffed him.

Id.

The court held that Thran was acting as a police officer, not under the

direction of the Hyatt, and therefore that the Hyatt could not be held liable for

his actions.  Id. at 636.  In reaching this conclusion, the Court reasoned as

follows:

> Here, all that Thran had been told by the hotel employees, the
> manager and the bartender was that there was trouble in the bar
> because the patrons would not leave when asked.  The bartender
> then asked him to have the patrons leave the lounge.  There is no
> evidence that there had been any direction given to Thran as to
> *how* he should empty the bar or that Hyatt had given him
> instructions regarding his security duties in general.

Id. (emphasis added).

By contrast, in Seibers, the court found genuine issues of fact to be tried

regarding the extent to which off-duty police officers were acting under the

direction and control of their private employer at the time the cause of action

39

accrued. 470 S.E.2d at 454. In <u>Seibers</u>, the plaintiff, a patron of the defendant racetrack, was injured and temporarily lost consciousness while engaging in horseplay that subsequently turned into a fight with a third-party defendant. <u>Id.</u> at 453. Several off-duty uniformed police deputies, who were providing security for the racetrack, took the plaintiff to another part of the track, where he received first aid and regained consciousness. <u>Id.</u> at 454. Paramedics advised the deputies that the plaintiff needed immediate medical attention, but the deputies threatened to arrest the plaintiff and would not allow him to leave the premises. <u>Id.</u> The deputies eventually escorted the plaintiff to another area of the track so he could shake hands with the third-party defendant with whom he had been fighting. <u>Id.</u> The evidence showed that the racetrack had a policy or practice or "trying to get those involved in altercations to resolve their disputes before leaving the racetrack." <u>Id.</u> The plaintiff subsequently required emergency brain surgery and lapsed into a coma. <u>Id.</u>

In finding issues of fact to be tried regarding the extent to which the officers were acting under the direction of the speedway, the Court reasoned as follows:

The record shows that Dixie's head of security told the deputies what to wear, when to report, where to stand, what to do, and the deputies received W-2 tax forms from Dixie. Furthermore, the record raises the issue of whether some of Dixie's in-house security personnel who were not off-duty deputies were involved in this incident. Questions also remain as to whether the officers were performing official police functions during the entire period at issue–the officers made no arrests and by the time they arrived the fight had stopped; [the plaintiff] was obviously injured and unable to continue the altercation, and the [third-party defendant] had backed away. Facilitating apologies between combatants is not necessarily acting within the realm of police functions, particularly when it purportedly prevents one from receiving medical treatment. Furthermore, issues of fact remain as to whether the cause of action arose while the deputies were implementing [the racetrack's] own policy of resolving altercations before those involved left the premises.

Id.

The Court finds this case to be factually similar to and controlled by

Touchton and Cook. The evidence in this case shows that Defendant Bradley,

while off-duty, went to work as a doorman for the Red Door Tavern on the

evening of the incident at issue at the request of a fellow officer, Officer

Caldwell, who regularly provided such services for Defendant Red Door and

asked Defendant Bradley to "fill in" for him. (Bradley Dep., Dkt. [66] at 41:23-

42:10.) On that evening, Defendant Bradley was not hired or engaged directly

AO 72A
(Rev.8/82)

by Red Door, nor did Red Door give Defendant Bradley instructions regarding what time to arrive or what services to perform.[8] (Id. at 43:8-17; 44:18-21.)

The evidence further shows that employees of the Red Door Tavern, like the park employee in Touchton and hotel employees in Cook, notified Defendant Bradley of a problem on the premises for which his services would be needed–namely, that a patron, Plaintiff, was intoxicated and would be asked to leave the bar. (Id. at 55:3-56:14.) The evidence further shows that two Red Door employees escorted Plaintiff to the front of the bar and asked him to leave the premises. (Id. at 56:25-57:1.) Defendant Bradley deposed that Red Door employees issued Plaintiff a criminal trespass warning, and that Bradley, pursuant to his duty as a police officer to enforce a criminal trespass warning, instructed Plaintiff that he had to leave the premises. (Id.) The altercation between Plaintiff and Defendant Bradley took place outside the Red Door Tavern and ended in Defendant Bradley placing Plaintiff under arrest.

In light of this evidence, the Court finds that Defendant Bradley was exercising a police function at the time of the incident with Plaintiff and was not

---

[8] The Court notes that Defendant Bradley had worked as a doorman at the Red Door Tavern, filling in for Officer Caldwell, on several occasions prior to the night of the incident. (Bradley Dep., Dkt. [66] at 42:20-24.)

acting under the direction of Red Door.[9]  Although Red Door employees

notified Defendant Bradley, prior to the incident, that Plaintiff was being asked

to leave the premises, presumably seeking his assistance to ensure that Plaintiff

left the premises, there is no evidence that Defendant Bradley received any

direction from Red Door regarding how to interact with Plaintiff or how to

remove him from the premises.  Nor is there any evidence that Red Door gave

Defendant Bradley any instructions regarding his security duties in general.

Furthermore, the evidence shows that Defendant Bradley was enforcing a

criminal trespass warning when he came in contact with Plaintiff and thus was

performing a quintessential police function.  See Rembert, 432 S.E.2d at 812

(holding that off-duty officer was acting as police officer and not employee and

reasoning, "Once [the plaintiff] refused to leave after being told to go by the

owner, she became a criminal trespasser. . . . [The defendant officer] was a

police officer authorized by law, not by employment . . ., to arrest [the

plaintiff].").  Based on the evidence in this case, no reasonable jury could

conclude that Defendant Bradley was acting under the direction of Red Door

---

[9] In light of this finding, the Court need not decide whether Defendant Bradley
was an employee or independent contractor of Red Door.  Page,578 S.E.2d at 524.

when he used force against and arrested Plaintiff. Red Door, therefore, cannot be held liable for Defendant Bradley's conduct under the doctrine of <u>respondeat superior</u>. Accordingly, Defendant Red Door Group LLC's Motion for Summary for Summary Judgment [53] is due to be GRANTED, and Plaintiff's Motion for Partial Summary Judgment [65] is due to be DENIED.

### Conclusion

In accordance with the foregoing, Defendants the City of Atlanta and Anwar T. Bradley's Motion for Summary Judgment [52] is **GRANTED, in part** and **DENIED, in part**. It is **GRANTED** with respect to Plaintiff's claims against Defendant the City of Atlanta, set out in Counts II and IV of the Complaint, but **DENIED** with respect to the claims against Defendant Bradley, set out in Counts I and III. Defendant Red Door Group LLC's Motion for Summary Judgment [53] is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment [65] is **DENIED**.

**SO ORDERED**, this _16th_ day of August, 2012.

_Richard W. Story_

**RICHARD W. STORY**
United States District Judge

44